**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LARRY P. CRAFT,**

|                          |                    |
| ------------------------ | ------------------ |
| **Plaintiff,**           | **1:12-cv-1619**   |
|                          | **(GLS/CFH)**      |

**v.**

**VILLAGE OF LAKE GEORGE**
**NEW YORK et al.,**

**Defendants.**
_____

| APPEARANCES:                          | OF COUNSEL:                          |
| ------------------------------------- | ----------------------------------- |
| **FOR THE PLAINTIFF:**                |                                     |
| American Liberties Institute          | FREDERICK H. NELSON, ESQ.           |
| P.O. Box 547503                       |                                     |
| Orlando, FL 32854                     |                                     |
|                                       |                                     |
| Office of Philip J. Vecchio, P.C.     | PHILIP J. VECCHIO, ESQ.             |
| 24 Huntswood Lane                     |                                     |
| East Greenbush, NY 12061              |                                     |
|                                       |                                     |
| **FOR THE DEFENDANTS:**               |                                     |
| Lemire, Johnson Law Firm              | GREGG T. JOHNSON, ESQ.              |
| P.O. Box 2485                         | APRIL J. LAWS, ESQ.                 |
| 2534 Route 9                          | MARY ELIZABETH KISSANE,            |
| Malta, NY 12020                       | ESQ.                                |
|                                       | TIMOTHY J. HIGGINS, ESQ.           |

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Larry P. Craft commenced this action against defendants the Village of Lake George, New York, the Board of Trustees of Village of Lake George, New York, Robert M. Blais, in his official capacity as Mayor for the Village of Lake George, and Ernie LaVine, in his official capacity as Supervisor of Peace Officers for the Village of Lake George, pursuant to 42 U.S.C. § 1983, alleging violations of his right to free speech and free exercise under the First Amendment, and his right to equal protection under the Fourteenth Amendment. (Compl., Dkt. No. 1.) The central focus of Craft's pleading is the constitutionality of specific permit requirements—pertaining to temporary signs and solicitation—imposed by the Village Code. (*See generally id.*) Pending are defendants' motion for summary judgment, (Dkt. No. 23), and Craft's motion for partial summary judgment, (Dkt. No. 24). For the reasons that follow, defendants' motion is granted, and Craft's motion is denied.

## II. Background

## A. Facts[1]

---

[1] Unless otherwise noted, the facts are not in dispute.

*1.     The Village and its Code*

The Village, a busy summer destination venue, is most crowded during its annual, nearly week-long summer event, "Americade."  (Defs.' Statement of Material Facts (SMF) ¶¶ 2-3, 7-9, Dkt. No. 23, Attach. 19.)  At issue here are portions of the Village Code that impose certain permit requirements.[2]  In particular, Craft challenges certain portions of § 220-24 and chapter 15, Article III, which is comprised of § 157-8 through § 157-13.  (Compl. ¶¶ 2, 18, 23-35.)  As it existed in 2012, § 220-24, a section titled "Sign standards," required a permit for certain signage.  Village Code § 220-24(B) (2012).  Section 220-24 is divided into seven subsections, A through G.  The first of those subsections is titled "General regulations."  *Id.* § 220-24(A).  It includes, among other things, the command that "[s]igns shall not contain misleading or inaccurate information."  *Id.* § 220-24(A)(17).  The second of the subdivisions, and most pertinent here, imposes a seasonal permit requirement.  *Id.* § 220-24(B).  Among the signs for which a permit was required were certain "temporary signs," which, as defined elsewhere, include leaflets, flyers, brochures or other handout

_____

[2] The parties have supplied portions of the Village Code from both 2012 and 2013. (Dkt. No. 1, Attachs. 1, 3; Dkt. No. 23, Attach. 6; Dkt. No. 24, Attach. 6.)  For the sake of simplicity, the court cites directly to the Code, in its different iterations, throughout this Memorandum-Decision and Order.

materials.  *Id.* §§ 220-101,[3] 220-24(B)(7)(b).  As for the temporary signs

that were exempted from the permit requirement, those signs were

expressly required to "comply with the general regulations" as set forth in

§ 220-24(A).  *Id.* § 220-24(B)(7)(a).  All other temporary signs required a

permit, were subject to a fee and deposit, and had to comply with a slew of

regulations.  *Id.* § 220-24(B)(7)(b).  Among the relevant regulations were

that a permit could be granted only twice per season, with the seasons

running from October 1 to May 1 and May 1 to October 1, and each permit

could not exceed fifteen days.  *Id.* § 220-24(B)(7)(b)(1), (3).  The other five

subsections dealt with "Placement, number, and height limitation[s],"

"Restrictions," "Sign removal," "Amortization of nonconforming signs," and

"Nonconforming freestanding signs."  *Id.* § 220-24(C)-(G).  The application

for a seasonal permit further required that it be filed "three days in advance

of request," and that a fee of $100 plus a $100 deposit, which was

refundable "only if [the] area [wa]s not littered," must accompany the

application.  (Dkt. No. 1, Attach. 2.)

    The 2012 version of chapter 157, Article III, which pertains to

_____

[3] Although neither party provided the 2012 version of § 220-101, the parties do not appear to dispute that the definition of "temporary sign" connoted the kinds of materials distributed by Craft in June 2012.

"Solicitation of Funds," included a permit requirement as well. Village Code § 157-8 (2012). Ten days prior to the solicitation of funds, any person, corporation, or association wishing to so act was required to seek a permit from the Mayor or his representative in writing. *See id.* §§ 157-8, 157-9. The Mayor was empowered to deny the application for a permit to solicit funds if, in his discretion, the applicant would not qualify for I.R.C. § 501(c) tax exempt status "or if [the] proposed solicitation would be likely to disturb the peace and order of the Village or be immoral or improper." *Id.* § 157-10. A validly issued permit could remain effective for no more than three days, and the Mayor was required to specify the precise location where the solicitation was allowed. *Id.* § 157-12. A violation of Article III would result in a fine of up to $100 and the violator's conduct was deemed to constitute "disorderly conduct," presumably under the New York Penal Law. *Id.* § 157-13.

On August 19, 2013, several months following commencement of this action, the Board adopted resolutions amending certain sections of Chapters 220 and 157. (Dkt. No. 23, Attach. 10.) Relevantly, with respect to Chapter 220, § 220-24 was amended as to the seasonal permit requirement as follows:

(b) The display of all other temporary signs requires a permit from Memorial Day through Labor Day, and is subject to a deposit and must comply with the following regulations.

[1] An application for a permit to erect, distribute, or post a temporary sign is required to be in writing and must be filed with the Village Clerk-Treasurer not less than two business days prior to the date of the proposed temporary sign activity. The applicant will be notified in writing of the grant or denial of a permit. If the permit is denied, the applicant will be notified in writing of the reason for the denial. If such application is filed before two business days prior to the date of the proposed temporary sign activity, the applicant will be notified of the grant or denial of the permit within two business days of when the application for the permit is submitted. If the application for a permit is submitted on exactly two business days prior to the date of the proposed temporary sign activity the applicant will be notified of the grant or denial of the permit within one business day of when the application for the permit is submitted.

[2] The Mayor shall issue a permit, after receipt of a $100 deposit, if such application complies with the criteria set forth within the section. When issuing a permit for temporary sign activity the only criteria the Mayor will consider are: any history of illegal behavior within the Village by the applicant and the number and locations of temporary signs already permitted. In determining how many temporary signs for particular locations will be issued a permit, the Mayor will only take into account the level of vehicle traffic, foot traffic and pedestrian flow reasonably anticipated in such location and any public safety concerns that could result from the disruption of vehicle and pedestrian traffic.

[3] A permit can also be denied if the applicant, on a prior occasion within the last year, had knowingly violated a material term or condition of the previous permit they had been granted. A violation of a material term or condition of a previous permit includes disregarding the location specified on the permit, causing litter as defined in §137-1, or violating any local or general law while participating in the activity specified on the permit which was granted. An applicant who is refused based upon the forgoing

factors may only be refused for a maximum of one year upon their first application thereafter.

[4] if a permit is denied based upon the considerations set forth in [2] of this subsection, a new permit can be granted for a different location based upon a first come first serve basis. The Mayor shall issue a new permit for a different location so as to reduce the inconvenience of the applicant filing a new permit application. When the Mayor issues a new permit, the Mayor will contact the applicant to discuss a new location without the need for a new permit application.

[5] The requirement of a $100 deposit required for permits as specified in subsection [2] may be waived upon a showing of indigence. Indigence can be shown through a written explanation by the applicant setting forth the exact reasons for their inability to provide the $100 deposit. The $100 deposit shall be used to clean up any litter left behind by the temporary signs, if no litter is left behind the deposit will be refunded in full. Any portion of the deposit which is forfeited will be limited to the actual cost of the clean-up of the litter. If any litter left behind causes the Village of Lake George to spend more than the $100 deposit to clean up; the persons, firms, corporations, partnerships, or associations responsible for the litter may be denied a permit the next time they apply and will be subject to the penalties of littering pursuant to §137-12.

[6] The sign shall be no more than 15 square feet with no single dimension greater than five feet.

[7] Except in the case of a stationary temporary signs; each permit shall not exceed one consecutive day if there are other permits pending for that same location by other applicants. However, there are no limitations as to how many permit applications can be submitted for a specified location by a person, firm, corporation, partnership or association. For stationary signs no permit shall exceed 14 days. After 14 days a person, firm, corporation, partnership or association may submit a new application which will be granted or denied based upon the same considerations enumerated within this subsection.

[8] The Mayor shall specify in the terms of all permits issued

pertaining to temporary signs the precise location within the Village where such signs shall be allowed. These permits for specific locations will be issued based upon a first come first serve basis.

[9] Such signs shall not project more than 15 inches from the face of the building wall nor extend beyond the outer edge of the wall to which it is attached.

[10] Such signs shall not attach to fences, trees, utility poles or the like, or be placed in a position that will obstruct or impair vision or traffic or in any manner create a hazard or disturbance to the health and welfare of the general public.

[11] Placement of temporary signs shall not hinder pedestrian traffic.

[12] Each business property site is allowed only one such sign at a time. Each such sign shall be affixed to the business property site of the property owner designated in the permit application.

Village Code § 220-24(B)(7)(b) (2013).

Chapter 157 was less extensively, but not insignificantly, amended.

Article III now provides:

§ 157-9. Application for permit.

All applications for a permit to solicit funds are required to be in writing and must be filed with the Village Clerk-Treasurer not less than 2 business days prior to the date of the proposed commencement of fund solicitation.

§ 157-10. Issuance of permit.

The Mayor shall issue a permit, without fee, to such persons, firms, corporations, partnerships or associations which comply with the considerations set forth within this section. Such permit shall be refused if: the applicant would not qualify for tax exempt status as defined by Section 501(c) of the Internal Revenue Code

of 1954; or if such proposed solicitation would be likely to create a risk or threat to public safety; or the applicant is deemed to be fraudulently representing itself, a cause, issue or organization; or if the applicant has occupied a specific location for at least one consecutive day and there are other applications submitted by other applicants for that specific location within the Village. If there are other applications by other applicants for a specific location the person, firm, corporation, partnership, or association which has previously occupied the area can submit a permit for a different location which will be awarded based upon a first come first serve basis.

If a person, firm, corporations, partnership, or associations acted unlawfully or disturbed the peace and order of the Village and were cited for such behavior, they may be refused a permit the next time they apply. An applicant who is refused based upon past acts may only be refused for a maximum of one year upon their first application after the unlawful or disruptive behavior.

Applicants will be notified of the Mayor's decision whether to grant or deny the permit within 2 business days of applying for the permit.

The significant governmental interests being considered in this permit requirement are:
1. Protecting the public from fraudulent representation by any person, firm, corporation, partnership, and association.
2. Safety regulating vehicle and pedestrian traffic. Protecting public safety.

§ 157-11. Refusal of permit.

Any applicant who shall have been refused such permit by the Mayor will be notified of the reasons for the denial and may apply to the Board of Trustees therefor at a meeting thereof, and the same may be granted or refused by the Board. In granting or denying the permit the Board will

take into account the same considerations as set forth in §157-10. An applicant will be notified of the Board's decision within two business days of the Board's meeting and will be notified of the reasons if such application is denied.

§ 157-12. Solicitation period; location limited.

- A. Any permit issued for the solicitation of funds at a specific location will remain valid for not longer than one day from the effective date of the permit.
- B. The Mayor shall specify in the terms of any and all permits issued for the solicitation for funds the precise location within the Village where such solicitation shall be allowed, and may impose additional reasonable restrictions thereto.
- C. If there is more than one application pending for a specific location, no person, firm, corporation, association, or partnership may solicit in the same location within the Village for more than one consecutive day. Such person, firm, corporation, association, or partnership may continue to solicit with a newly granted permit identifying a new location set by the Mayor based on a first come first serve basis.

*Id.* §§ 157-9 to 157-12. Sections 157-8 and 157-13, regarding the basic permit requirement and penalties, were unaffected by the 2013 amendments. The Board's resolution also pronounced that "[t]he Village of Lake George has no intention to re-enact or reinstate § 220-24, § 220-101, and § 157 in the same form it previously existed prior to this amendment." (Defs.' SMF ¶ 62.) With this statutory framework in mind, the court turns to the particular facts of the case at hand.

## 2.    Craft's Activities in the Village

The main thoroughfare in the Village is State Route 9, also known as Canada Street.  (*Id.* ¶ 4.)  In June 2012, during Americade, Craft and his family, who travel the country preaching the Gospel of Jesus Christ, "engaged in street preaching" at the corner of Canada and Montcalm Streets.  (*Id.* ¶¶ 10, 11, 16, 17, 19, 21, 23, 32; Dkt. No. 23, Attach. 5 at 26.)  The Craft family "handed tracts to pedestrians who then proceeded to drop the tract on the ground."  (Defs.' SMF ¶ 22.)  On June 8, 2012, Village Peace Officer Keith Hendry approached Craft and his family on the sidewalk, had some interaction with them, and ultimately issued two appearance tickets to Craft—the first for disorderly conduct in violation of New York Penal Law § 240.20, and the second for solicitation without a permit pursuant to Village Code Chapter 157, Article III.  (*Id.* ¶¶ 24, 30, 31, 33; Dkt. No. 23, Attach. 3 ¶ 1; Dkt. No. 23, Attach. 7.)  The next day, June 9, 2012, Craft and his family returned to the Canada Street sidewalk and again preached and distributed tracts just as they had done the day prior.  (Defs.' SMF ¶ 32.)  While Officer Hendry again spoke with Craft, he did not issue any tickets on June 9.  (Dkt. No. 25.)  Both June 8 tickets were eventually dismissed in July 2012 without any appearance by Craft.  (Defs.'

SMF ¶ 52.)  On June 11, 2012, Craft requested and received permit

applications from the Village, but he did not complete those applications.

(*Id.* ¶ 39.)

## B.    Procedural History

Craft commenced this action in October 2012.  (*See generally*

Compl.)  In the complaint, Craft specifically identifies Code §§ 157-8, 157-

9, 157-10, 157-13, 220-101, 220-24(B)(7) of the Village Code as offensive

to his constitutional rights.  (*See generally* Compl.)  Craft's claims consist of

constitutional challenges, both facial and as applied, to certain portions of

the Village Code based upon his right to: (1) free speech, (*id.* ¶¶ 2, 63-73);

(2) free exercise of religion, (*id.* ¶¶ 74-89); and (3) equal protection of the

laws, (*id.* ¶¶ 90-96).  Craft's free speech claim raises a challenge to the

Village Code for overbreadth and "vagueness and by granting unfettered

discretion to [d]efendants and their officials, agents and employees."  (*Id.*

¶¶ 65, 69, 70.)  By way of relief, Craft seeks: (1) an injunction restraining

and enjoining defendants from enforcing the challenged portions of "§ 220-

24 and § 157-8, *et seq.*, while [he], and all persons acting in concert, or

participating with him, are engaging in [f]reedom of [s]peech and [f]ree

[e]xercise of [r]eligion activities in the Village's [p]ublic [s]paces and

designated public fora"; (2) a declaration that the same portions of the Village Code "constitute an impermissible restraint of [his] rights in violation of the . . . Constitution"; and (3) an award of nominal and/or compensatory and/or special and/or exemplary damages.[4] (*Id.* at 19-20.)  Following the completion of discovery, and an extension of the dispositive motion deadline, the parties filed the pending summary judgment motions on the same day.  (Dkt. Nos. 20, 23, 24.)

## III.  Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y.2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir.2012).

## IV.  Discussion

Because the parties simultaneously filed their summary judgment motions, (Dkt. Nos. 23, 24), there is significant overlap among the

---

[4] Notably, while styled as separate causes of action, (Compl. ¶¶ 97-110), Craft's "claims" for injunctive and declaratory relief are merely the remedies he seeks for the underlying causes of action alleged.  *See Miller v. Wells Fargo Bank, N.A.*, No. 13 CV 1541, 2014 WL 349723, at *11 (S.D.N.Y. Jan. 30, 2014) ("[D]eclaratory judgments and injunctions are remedies, not causes of action." (internal quotation marks and citation omitted)).

arguments raised by them.  As an initial matter, the court notes that Craft's

claims are somewhat difficult to understand.  While Craft alleges that the

identified Village Code sections are vague, grant "unfettered discretion" to

decisionmakers, impose content-based restrictions, are overbroad, and fail

narrow tailoring, he fails to articulate why or how.  (Compl. ¶¶ 65, 68, 69,

70.)  As explained below, however, defendants' motion for summary

judgment is granted as to all of Craft's claims.

**A.      Defendants' Motion For Summary Judgment**

      *1.      As Applied Challenges: Free Speech and Free Exercise*

Defendants argue first that Craft's as applied challenges to the

Village Code on free speech and free exercise grounds are without merit.

(Dkt. No. 23, Attach. 13 at 9-16.)  In support of their argument, defendants

contend that: (1) the appearance tickets issued to Craft on June 8, 2012 do

not implicate Craft's First Amendment rights to speech and exercise of

religion; (2) Craft's admissions demonstrate that he was not deprived of his

free speech rights nor was his speech chilled; and (3) the tickets were

legitimately issued through a constitutional application of the solicitation

permit requirement.  (*Id.*)  The "only 'application' of the Village Code

[recognized by defendants] was the issuance of the two appearance tickets

to [Craft] on June 8, 2012, including a ticket for solicitation of funds without a permit and a ticket for disorderly conduct." (*Id.* at 9.) In other words, defendants do not perceive an as applied challenge to the seasonal permit requirement because, in their view, it has never been applied to Craft.

Craft contends that the Village Code was applied to him beyond the issuance of the tickets; indeed, he argues that Hendry's demands that he obtain a permit before distributing leaflets and confirmation of the permit requirement from Village officials demonstrate application of the seasonal permit requirement to him. (Dkt. No. 29, Attach. 3 at 5-6.) Craft goes on to assert that the citations deprived him of free speech rights in 2012, although admittedly in dispute, and 2013. (*Id.* at 7-11.)

Before delving into the meat of Craft's as applied challenges, it is important to note that he failed to offer any response to defendants' contention that his free exercise rights were not violated in June 2012. (Dkt. No 23, Attach. 13 at 9.) Craft is deemed to have abandoned his as applied free exercise claim, *see Gaudette v. Saint-Gobain Performance Plastics Corp.*, No. 1:11-cv-932, 2014 WL 1311530, at *16 (N.D.N.Y. Mar. 28, 2014) (explaining that a court may deem a claim abandoned when a party moves for summary judgment on one ground and the nonmoving

party fails to address that argument), and, in any event, the court discerns no facts supportive of any such claim.[5]

Turning to whether Craft has standing to raise an as applied challenge to the seasonal permit requirement, the court is not persuaded that the Village Code was applied to Craft. It is axiomatic that "[a]n as-applied challenge . . . requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual *to whom it was applied* of a protected right." *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006) (emphasis added) (internal quotation marks and citations omitted). While threat of enforcement, and the concomitant chilling effect on speech, may give rise to a *facial* challenge of a law that regulates speech, *see Bigelow v. Virginia*, 421 U.S. 809, 816-17 (1975), there is no way in this case to measure the constitutionality of the seasonal permit requirement, in its June 2012 iteration, as applied to Craft because it was not applied to him. In fact, it has never been applied to him. Accordingly, Craft's as applied free speech claim is only potentially viable with respect to the

_____

[5] Indeed, no version of the facts would support a facial challenge under free exercise principles either. Accordingly, summary judgment is granted on that claim.

16

solicitation permit requirement, which was clearly applied to him by way of the appearance ticket issued by Hendry on June 8, 2012. (Defs.' SMF ¶ 33.)

Craft's as applied challenge to the 2012 Village Code solicitation permit requirement fails without any need to analyze whether it constitutes a permissible time, place, and manner restriction, or is unconstitutionally vague or overbroad. Indeed, while the Village Code was applied to him through Hendry's issuance of an appearance ticket for solicitation without a permit, (*id.*), Craft was not thereby deprived of any constitutional right. *See Field Day*, 463 F.3d at 174 (requiring that an as applied challenger demonstrate the deprivation of a protected right). Because Craft has expressly disavowed that his family has ever solicited money from passersby or that he personally did so on June 8, 2012, (Dkt. No. 23, Attach. 5 at 19, 35-36), the ticket cannot be blamed for squelching his right to engage in the very speech he disavows. Taking Craft's undisputed testimony at face value, he could not be deprived of what he did not attempt or intend to exercise. For the foregoing reasons, defendants are granted summary judgment as to Craft's as applied challenges.

2. *Equal Protection*

Next, defendants assert that there is no evidence to support an equal protection claim.  (Dkt. No. 23, Attach. 13 at 16-17.)  Specifically, defendants note that Craft is unable to show that he was treated differently than anyone similarly situated to him, and that, during his deposition, he "admitted that he possessed no evidence of disparate treatment."  (*Id.*)

Craft argues in response that defendants' argument regarding equal protection is misguided and "fails to understand the distinction in the legal analysis related to this claim." (Dkt. No. 29, Attach. 3 at 12-13.)  Without explaining the connection to the Equal Protection Clause, Craft asserts that his allegations of unbridled discretion, overbreadth, and vagueness give rise to a facial attack decided in the First Amendment context.[6]  (*Id.* at 12-13, 19-27.)

Little need be said here.  Despite Craft's snarky assertion that defendants misapprehend the analysis related to overbreadth and unbridled discretion, (Dkt. No. 29, Attach. 3 at 12-13), the court can discern no independent claim under the Equal Protection Clause here, whether raised as an as applied or facial challenge.  Indeed, Craft does not come

_____

[6] Craft also claims that unbridled discretion, overbreadth, and vagueness demonstrate violations of due process.  (Dkt. No. 29, Attach. 3 at 19-27.)  Because no due process claim was alleged in the complaint, references to due process violations are disregarded.

forward with any facts to show disparate treatment or impact based on any classification, which is fatal to his claim. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) ("The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."). Notwithstanding the shortcomings of Craft's equal protection claim, the court appreciates that allegations of overbreadth and unbridled discretion may confer standing to mount a facial challenge to a licensing scheme that targets speech. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 223 (1990); *Prayze FM v. F.C.C.*, 214 F.3d 245, 252 (2d Cir. 2000).

### 3.    *First Amendment Facial Challenges*

As a threshold matter, defendants claim that Craft's facial challenges to the Village Code on First Amendment grounds are moot by virtue of the fact that the Village amended the Code in August 2013. (Dkt. No. 23, Attach. 13 at 18-20.) Similarly, defendants assert that Craft lacks standing to mount a facial challenge because, by his own admissions, Craft did not return to the Village in 2013 "based on issues outside of the Village" and that he "never solicits money." (*Id.* at 26-27.) If Craft's facial challenges to

the seasonal permit requirement are not moot, defendants contend that the Village Code is not facially unconstitutional.  (*Id.* at 20-25.)  In particular, the Village argues that the challenged portions of the Village Code are content neutral, serve legitimate government interests, and leave open ample alternative channels of communication.  (*Id.*)

On the issue of mootness, Craft argues that the 2013 amendments to the Village Code cannot moot his claims to the extent that the offensive portions were not corrected or removed.  (Dkt. No. 29, Attach. 3 at 13-15.)  Craft also asserts that his claim for damages prevents mootness.  (*Id.* at 16.)  With respect to standing, Craft claims that his allegations of unbridled discretion confer standing upon him.  (*Id.* at 27.)  On the merits of his facial challenges, Craft contends that the seasonal permit requirement is content based, which gives rise to a presumption of invalidity and triggers strict scrutiny review.  (*Id.* at 17-19.)

The court addresses first defendants' contention that the facial challenges are moot.  (Dkt. No. 23, Attach. 13 at 18-20.)  Finding that argument to be dispositive, the court goes no further.  There is no doubt that "[t]he voluntary cessation of allegedly illegal conduct usually will render a case moot 'if the defendant can demonstrate that (1) there is no

20

reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Lamar Adver. of Penn, LLC v. Town of Orchard Park, N.Y.*, 356 F.3d 365, 375 (2d Cir. 2004) (quoting *Granite State Outdoor Adver., Inc. v. Town of Orange, Conn.*, 303 F.3d 450, 451 (2d Cir. 2002)). "'[S]ome deference must be accorded to a [legislative body's] representations that certain conduct has been discontinued,'" *id.* at 376 (quoting *Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 59 (2d Cir. 1992)), and "'[c]onstitutional challenges to statutes are routinely found moot when a statute is amended,'" *Cuomo*, 981 F.2d at 61 (quoting *Massachusetts v. Oakes*, 491 U.S. 576, 582 (1989)).

Of course, the potential for mootness depends on the extent and effect of the statutory amendments at issue. *See Granite*, 303 F.3d at 451-52. Indeed, "claims will not be found moot where the defendant's amendments are merely superficial or the law, after amendment, suffers from similar infirmities as it did at the outset." *Lamar*, 356 F.3d at 378. The Second Circuit has explained that, where an ordinance is altered such that a substantially different controversy exists post amendment, "arguments as to the unlawfulness of the ordinance as amended should [be] raised . . . in

an amended complaint." *Id.*

Here, the Code sections at issue have been amended in such a way as to present a substantially different case than the one sued by Craft. Before recounting the obvious and substantial differences between past and present versions of the Village Code, the court notes that, while it was not amended, § 220-24(A)(17)—the Code provision that Craft continually points to as the primary basis of his argument that the seasonal permit requirement constitutes a content-based regulation of speech,[7] but that he failed to specifically identify in his complaint, (Dkt. No. 24, Attach. 7 at 7; Dkt. No. 29, Attach. 3 at 18)—does not apply to the seasonal permit requirement. This determination relies on statutory interpretation. *See Field Day*, 463 F.3d at 176-77.

As has been succinctly explained by the Second Circuit:

> Statutory construction . . . is a holistic endeavor. In interpreting statutes, this Court reads statutory language in light of the surrounding language and framework of the statute. [W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, we may construe the statute to avoid such problems unless such construction is plainly contrary to the intent of [the

---

[7] Craft also identifies § 220-24(B)(7)(a) as "allow[ing] for various exceptions based upon the content [of] the message." (Dkt. No. 29, Attach. 3 at 18.) That provision, however, pertains to "temporary signs" that are not covered by the permit requirement.

Legislature].

*Id.* at 177 (internal quotation marks and citations omitted). Viewing § 220-24 of the 2013 Village Code as whole, which is among the most obvious means of ascertaining legislative intent, *see, e.g.*, N.Y. Stat. § 97 (McKinney 2014) ("A statute or legislative act is to be construed as a whole, and all parts of an act are to be read and construed together to determine the legislative intent."), it is apparent that neither § 220-24(A)(17), which prohibits misleading or inaccurate signs, nor any other part of the "General regulations" applies to the seasonal permit requirement. Unlike § 220-24(B)(7)(a), which is expressly required to "comply with the general regulations" contained within § 220-24(A), § 220-24(B)(7)(b) requires compliance "with the [listed] regulations." That compliance with the general regulations is not expressly required as to the seasonal permit requirement causes the court to conclude that the general regulations do not apply to the seasonal permit requirement. As such, and in the absence of any other provision that could be read to impose a content-based regulation, the seasonal permit requirement is content neutral.

Circling back around to the sweeping changes implemented by the

Board's amendment of the Village Code in 2013, a side-by-side comparison to the challenged 2012 version demonstrates the mootness of Craft's facial challenges. Among other things, the new Village Code imposes a set of clearly defined criteria for granting or denying a seasonal permit, which tends to significantly undermine Craft's argument regarding the unbridled discretion afforded to the Mayor as decisionmaker. The solicitation permit requirement has likewise been revamped. The sections dealing with solicitation now provide for more clearly delineated grounds for the denial of a permit and expressly state the governmental interests served by the permit requirement.

Notwithstanding the significant amendments to the Village Code, the court gives some deference to the Board's pronouncement that it has no intention to reinstate the old version of the Village Code. (Defs.' SMF ¶ 62); *see Lamar*, 356 F.3d at 376. Consistent with the logic of *Lamar*, the amendments effectuated by the Board here have mooted Craft's facial challenges. Notably, Craft has not amended his complaint to allege facial challenges to the revised Village Code, nor has he requested eleventh-hour leave to do so.

As for Craft's argument that his damages claims prevent mootness,

(Dkt. No. 29, Attach. 3 at 16), the court disagrees.  While the basic premise

upon which Craft relies is correct, *i.e.*, a claim for damages, even nominal

in nature, generally prevents mootness, *see Van Wie v. Pataki*, 267 F.3d

109, 115 n.4 (2d Cir. 2001), it is also true that the remedy for a facial

challenge "is necessarily directed at the statute itself and *must* be injunctive

and declaratory."  *Ezell v. City of Chicago*, 651 F.3d 684, 698 (7th Cir.

2011); *see Tanner Adver. Grp., L.L.C. v. Fayette Cnty, Ga.*, 451 F.3d 777,

786 (11th Cir. 2006) (explaining that a facial challenge "cannot give rise to

the remedy of damages"); *Lamar*, 356 F.3d at 378 ("[W]e disagree with

Lamar's contention that the controversy over the original ordinance

remains alive because Lamar incurred certain damages under the

pre-amended version of the ordinance that it should still be permitted to

recoup.").  Accordingly, Craft's facial challenges are mooted by the

Village's amendment, and his prayer for damages, which are unavailable

on those claims, cannot save them.

## B.      Remaining Arguments and Craft's Cross Motion

The remainder of defendants' arguments—dealing with the

appropriateness of certain relief or whether Blais and LaVine are

appropriate parties to the action—go to issues that are irrelevant given the

court's disposition of Craft's causes of action. (Dkt. No. 23, Attach. 13 at 1 n.1, 28-30.) Moreover, for the same reasons that summary judgment was granted to defendants on Craft's facial challenges, Craft's cross motion for partial summary judgment on those claims, (Dkt. No. 24), must be denied.

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 23) is **GRANTED**; and it is further

**ORDERED** that Craft's motion for partial summary judgment (Dkt. No. 24) is **DENIED**; and it is further

**ORDERED** that Craft's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

August 7, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court